# HILLSBOROUGH,

## JANUARY TERM, A. D. 1849.

### Hughes *v.* Parker *et al.*

If an act of incorporation be granted to persons therein named, "their associates and assigns," the persons named may exercise the corporate rights and functions, without taking to themselves associates.

The election of directors, and other suitable officers or agents, for the government of the affairs of the corporation, and the conduct of its business through the agency of such, pertain to the nature and condition of aggregate corporate bodies, without being expressly conferred by the act of incorporation.

Therefore, the provision in the act incorporating the "Manchester and Lawrence Railroad," which requires the directors to be chosen at the annual meetings of the corporation, is directory only, and not restrictive; and its observance is not necessary to the validity of an election.

The title of directors of a corporation, who are in under color of an election, cannot be inquired into in a suit in equity, instituted to restrain them from exercising the functions of directors, upon the ground of an irregularity in their election.

In Equity. The bill states that on the 30th day of June, 1847, certain persons named, their successors, associates and assigns, were incorporated as the "Manchester and Lawrence Railroad," with a capital of from five to eight hundred thousand dollars; that by the provisions of the act the government of the corporation was to have been vested in a board of not more than "seven directors, chosen by the members of said corporation at their annual meeting, who shall elect one of their number presi-

dent of the board and of the corporation, and shall also choose a clerk and treasurer." The act farther provided that Samuel D. Bell, James U. Parker and Herman Foster, or two of them, should call the first meeting, " and that the annual meeting for the choice of directors shall be holden at such time and place, in this State, as may be provided by the by-laws." The first meeting was called by the persons authorized, and was holden on the 31st day of July, 1847, by the grantees, who then and there voted to accept the charter; and without having taken to themselves any associates, proceeded to elect the defendants directors. They then enacted a code of by-laws, one article of which provided that the annual meeting should be holden on the last Saturday of July, each year, and provided a manner in which such meetings should be notified; which notification required the agency of the president, treasurer or clerk. The by-laws, also, provided that such meetings should be held at such places as the directors might designate.

The bill then set forth that the defendants, assuming under color of that election to be directors, elected James U. Parker as the president, and elected other officers; caused books for subscription to the stock to be circulated, which were subscribed by persons desiring shares, to a greater number than five thousand, the number fixed by the defendants; and, in consequence, the defendants proceeded to assign to subscribers each such number of shares as they saw fit, assigning them to the plaintiff, who, supposing that the defendants held their office legally, took said shares and paid in ten per cent. as and for the first installment ordered by them.

The bill farther states that the defendants, assuming, as before stated, to be directors, proceeded to adopt the provisions of the act of the General Court, to render railroad corporations public, and for other objects, and also proceeded to locate the road, and to expend the funds of the corpo-

ration; that they afterwards called a meeting of the stockholders, to be convened on the 26th day of October next following, who voted to adopt the act making railroad corporations public, and did vote, also, to call out the railroad commissioners; that the defendants have, also, employed divers surveyors, engineers and other servants in constructing the road, and have expended large sums of the money of the corporation.

The bill, insisting that the defendants are not legally the directors of the corporation, prays for an injunction against their farther proceedings in the matters described, and for general relief.

The answer admits the material facts, as stated, and insists that the defendants are legally the directors of the corporation, and were regularly chosen as such; and the cause was heard upon the bill and answer.

*B. M. Farley,* for the plaintiff.

The answer is in the nature of a demurrer. It admits all and every allegation set forth in the bill of complaint. True it is that they deny the useless and unnecessary expenditure of money by them, collected in the way of assessments upon the shares of capital stock by them subscribed. This particular allegation is not insisted on or urged by the complainant.

The first question presented by the bill is, whether the grantees named in a charter granted by the legislature to certain individuals named, *their associates,* &c., can be *the corporation* within the meaning and intention of the legislature. The combination of capital under corporate administration has for years been the source of much legislation, and it is not unreasonable to suppose that after the many and repeated acts of legislation upon the subject, a custom has been fixed whereby all are to be, to a certain extent, governed. In the present instance the answer admits that without calling to their aid, or suffering

the participation of "associates," the grantees alone commenced exercising corporate rights, unusual and unprecedented in the course pursued by other grantees. It is contended that no more was granted to those named in the charter than the mere right to take initiatory steps to admit associates, and to move on towards the formation of *the corporation* contemplated by the legislature.

Charters granted to companies, although in strictness of law they may be called private, nevertheless, in their operation have a direct, immediate bearing upon the public. It is idle to say that a railroad is not a public enterprise. It is so in truth and in fact, and has now been rendered so by the acts of our own legislature. The public are, it is conceived, so far interested that a charter, though granted to individuals by name, and *their associates,* would seem as clearly to point out the meaning of the legislature, that associates should go to constitute an integral part of a corporation, as the grantees themselves. It is but for convenience that the word "associates" is used. It might lead to an endless catalogue, and in fact be impossible, at the time of creating the charter, to enumerate by name all who might be desirous of being associates. It is, then, urged by the complainant, that the spirit and even letter of the charter has been set at nought by the grantees, thus assuming to be the corporation without even making the offer of an invitation to any to join them as associates. It is not carrying out the intention of the legislature, to shut the door against the public, and instead of making use of what was intended as simply a power to institute initiatory proceedings to arrive at an end—to the creation of a corporation—to step by one bold stride to the very goal sought.

But a yet more serious objection occurs. All powers which a corporation or its officers have, they derive from the charter itself. Nothing, not therein expressly granted or necessarily implied, can by possibility be assumed

legally by them. They are bound by the strict construction of the act creating them. The complaint alleges that the defendants are assuming to act under a pretended election, void by the very terms of the charter. Section fourth of the charter among other things provides that the management and direction of the affairs of the corporation shall be vested in a board of directors; and section tenth provides for the *time* and *place* of election of the directors. "The annual meetings of the corporation, *for the choice of* directors, shall be holden at such time and place in this State as may be provided by the by-laws." The complaint alleges, and the answer admits, that in the present instance the cart certainly was misplaced. The very foundation was not laid; nor even the corner-stone, when the fabric was sought to be reared. A code of by-laws, naming *time* and place, were a pre-requisite to an election of officers. The charter expressly declares the necessity of this pre-requisite. Even admitting, for argument, that the grantees were the corporation, they were bound, by this enactment, to take certain steps in a certain order. As well might it be pretended that the omission of the direction, in section ten, that "Samuel D. Bell, James U. Parker, and Herman Foster should call a first meeting, by advertising, &c., might be disregarded, as this; as well might those three grantees have come together, and claimed to be the corporation, as that the grantees, the corporation, or any one, could proceed to an election without having complied with the provisions of the charter, pointing out the specific manner and rule by which they are to proceed. Who shall say that, had a code of by-laws been adopted, an entirely different mode of election would not have been provided; that a different time would not have been appointed, and a different place named for holding the annual meeting? Could there be an annual meeting held until time and place for it had been appointed;—it would be an absurdity so to say. The charter gives

no power to name a place, or to constitute such a meeting at all, except by the enactment of a code of by-laws. It is a condition precedent to the very existence of officers. Would it for a moment be contended, that an individual would be a member of the legislature who had been elected by the votes of individuals gathered together without any legal notice, without a moderator, without complying at all with the requisites of the statute regulating elections; and would it be pretended that if there existed no law at all providing for the election of an individual to fill an office, he could in any way, by any election, be legally constituted to fill such office? The answer sets forth a vote of a meeting purporting to be a meeting of the stockholders of the Manchester and Lawrence Railroad, holden at Manchester, October 26th, A. D. 1847. That vote would seem in its terms to recognize and adopt the acts of the board of directors assuming to act. But this meeting was summoned by the very pretended officers whose authority in every particular is contested. If their election or elevation to the office they professed to fill was void, every act of theirs of an official character was void. Among these official acts was the convening or calling together this very meeting of the 26th of October. What clerk could sign the notice? Where were the directors who were empowered to direct a clerk to call a meeting? And where was a meeting, or when was a meeting convened, which could adopt any acts whatever? The meeting, we contend, was illegally summoned, and the acts (if any) which they professed by their votes to justify and adopt, were void and illegal *ab initio*, and their defects could in no wise be cured or amended by any subsequent recognition or adoption whatever. It was as though no officers had ever existed, consequently no *official* acts could ever be done by any men claiming to wear an official garment which never had existence. Such are the views of the complainant. The condition precedent in the second ob-

jection mentioned not having been complied with, all falls to the ground.

*J. U. Parker*, for the defendants.

The bill alleges that the defendants were not legally chosen, and therefore have no right, as directors or otherwise, to exercise the powers they now assume to exercise. The first reason stated in the bill why they were not legally chosen is, that the grantees did not admit associates prior to the election of these defendants. The second reason is, that they were not elected at the annual meeting of the corporation, as is alleged in the bill they ought to have been. An injunction is prayed for because these directors have assumed to adopt the general railroad law of December, 1844, to call upon the railroad commissioners, and to do other acts, &c.

We deny the first position, that the grantees were bound by law to take associates before they could act. By the first section of the act of incorporation the grantees are *made* and *are* the corporation, and have full power and authority to carry into effect the object and purposes of the grant. Nor does the admission of one or more associates add to the power of the corporation, as defined in the charter. The number only of corporators is increased by the addition of associates, but no new power is given. Suppose that the enterprise is so hazardous that none but the grantees are willing to engage in it? Can it be contended for a moment that the act is nugatory, and its object and purposes to be defeated, because none can be induced to come to the aid of the corporation? May not the grantees alone carry into effect the object of the grant? In the 1st Term Reports, *King* v. *Amory*, 575, it is said, " If a charter be given to a company, and certain persons are nominated to admit others, the charter needs only to be accepted by the majority of the nominees, *for they alone constitute the original corporation*, and those who are after-

Hughes *v.* Parker.

wards admitted manifest their assent by becoming members." And Ang. & Am. 70, says, "and even if there be but *one* nominee, his acceptance is sufficient;" (quoting *Penobscot Bridge Corporation* v. *Lawson*, 4 Shep. 224, to sustain the position.) This question has been settled in Maine. *Day et al.* v. *Stetson*, 8 Greenl. 365. The court say, "the private statute of 1830, ch. 80, constituting S. P. S. and his associates a corporation by the name of the Bath Ferry Company, did not impose on him the necessity to take associates, but virtually conferred on him alone the right to exercise all the corporate powers therein granted." This same principle was again decided in the case in 4 Shep. 224, above cited. Ang. & Am. 25, 65. The above cases are directly in point, and I have not been able to find any decision or *dictum* to the contrary.

But it is alleged in the second place that the grantees had no power to choose directors. It is incident to every corporation to elect officers by the body at large, when the power of election has not been vested in a minor body; Ang. & Am. 76, 89; nor is it necessary such power should be conferred by charter. Same, p. 89. If the grantees are the original corporation, (1st Term Reports 575) it would seem they must have the power to organize and to elect officers *at some time*, and the question is one of *time* rather than of *power*. It cannot be denied that the corporation may choose directors at their annual meeting. But cannot they elect them at their first meeting? Certainly they may organize themselves in some way, *and must do it*. Why, then, not organize in this way? The charter does not forbid it, but is entirely silent on the acts to be done at the first meeting, leaving, as we contend, the corporation at liberty to make such organization as they should deem best. Under this particular charter there seems an absolute necessity of organizing in this way; otherwise the corporation could not have a presiding officer, clerk or treasurer—the charter requiring all these officers to be

elected by a board of directors. (See section 4th of the charter.) It is true, these officers are for the "time being," and can only hold their offices until others are duly chosen and qualified in their stead; (sec. 4 of the charter) but this does not limit the power of the grantees to elect them.

But it has been held that a clause in a charter requiring an officer to be chosen at an annual meeting is merely directory. Ang. & Am. 94, and authorities there cited. Also, same principle, Ang. & Am. 107, 108, 109.

In the case *People* v. *Runkin*, 9 Johns. 147, the court say that trustees, elected after election day, would be in by color of office; that this election would not be void; that their acts would be good; that the corporation would still remain, and the irregularity, if any, *would cure itself in a subsequent year*.

If officers may be chosen *after* the stated day of election in the charter, there seems to be no good reason why they may not be chosen *before*, when no such officers exist, inasmuch as the corporation cannot act without them, and they can only hold their offices until the charter day arrives. Ang. & Am. 94, remark: "the charters of private incorporated companies, in this country, are, in general, sufficiently free to allow an election of the necessary officers to be made when the occasion requires it."

By the second section of the Concord Railroad charter the following provision is introduced: "The capital stock of this corporation shall be divided into 10,000 shares, and the immediate government and direction of the said corporation shall be vested in seven directors, who shall be chosen by the members of the corporation in the manner herein after provided, and shall hold their offices until others shall be duly elected and qualified to take their places as directors."

And the tenth section reads: "The annual meeting of the members of said corporation shall be holden on the

first Wednesday of July, at such place within this State as the directors for *the time being shall appoint.*" These are all the provisions in that charter relating to the choice of directors. Now it is perfectly certain that under such a charter there can be no *annual* meeting until there shall be *directors* to appoint the *place,* and yet no provision is made for the choice of directors until the annual meeting. Nor can there be a special meeting, because the directors are to call all special meetings. The fair inference from the whole charter is, that directors must be chosen prior to an annual meeting. It may be remarked that these provisions are common to many of the railroad charters in the State, and that the 4th and 10th sections of the Manchester and Lawrence Railroad charter, and the 2d and 10th sec- of the Concord Railroad charter are substantially alike. But we contend that the Manchester and Lawrence charter fairly implies that the directors are to be chosen at the first meeting of the members of the corporation. In the 4th section it speaks of the choice of directors by the members at their annual meeting. In the 10th section it says : " The annual meetings of the corporation for the choice of directors," &c. ; and the word " meetings" clearly relates to such stated charter days or annual meetings as may be held by the corporation after their first meeting ; while the word " meeting," in the 4th section, means the stated annual or first meeting holden by the members of the corporation. Now, could this corporation hold a special or stated meeting without some person authorized to give the proper notice ? and none but the president, clerk or treasurer, *by the by-laws,* could give the same. But it is a sufficient answer to this bill to say that the defendants are acting under the color of office ; Ang. & Am. 104, 105, and authorities there cited ; and by the vote of the stockholders, of October 26, 1847, cited in the answer, they are for all purposes admitted to be the officers of the corporation. But farther, we say, these officers were

chosen at the *annual* meeting of the corporation. The corporation could appoint their annual meeting at such time as they might choose; and they did make by their by-laws the meeting of the 31st of July their annual meeting.

A farther allegation in the bill is, that the directors proceeded to adopt the general railroad law of December, 1844, having no power to do so. To this we may say that the vote of the grantees, cited in the answer, gave them full power to adopt that law, and the maxim " *qui facit per alium facit per se*," applies in full force. And it may be now questioned whether railroad corporations are obliged, by special vote, to adopt that law, inasmuch as it is now understood to be settled that such corporations are public corporations. *Greeley* v. *Concord Railroad.* It is desirable to have the last point settled, although it may not be necessary to the decision of this case, for the corporation, at its special meeting on the 26th of October, called for that purpose, did vote to adopt the law.

GILCHRIST, C. J. The Manchester and Lawrence Railroad was incorporated on the 30th of June, 1847. The grantees were nineteen in number. The first section of the charter provides that these grantees, " their associates, successors and assigns, shall be a body corporate," &c.

The fourth section provides that " the immediate government and direction of the affairs of the corporation shall be vested in a board not exceeding seven directors, chosen by the members of the said corporation at their annual meeting."

The tenth section enacts that Messrs. Bell, Parker and Foster, or any two of them, shall call the first meeting of the grantees.

These persons gave notice, and on the 31st day of July, 1847, the grantees met in pursuance of the notice, and voted to accept the charter; and then, without having

Hughes *v.* Parker.

taken or made any associates or assigns, elected the defendants as directors.

The defendants having been so elected, proceeded to do those things which directors might lawfully do. They chose one of their number to be president of the board and of the company. They caused books to be opened for subscription to the stock, and apportioned the shares as they deemed just and proper among the individuals who had subscribed, and received assessments ordered by themselves to be paid in by such subscribers. They also proceeded to locate the road, and to expend the funds of the company in executing surveys, explorations, and like works, under the direction of the proper officers. It is conceded, by the form in which the cause comes up for hearing, that these were such acts as directors of the corporation had the right to perform, and that they were performed in a manner which furnishes no substantial ground for grave complaint on the part of those interested in the success of the work for which the corporation has been created.

The bill is preferred by a stockholder in the company, for enjoining the defendants against the farther prosecution of the work, and the farther exercise of the functions of directors, upon the ground that they have not been legally elected to their office; and this the plaintiff seeks to maintain upon two grounds.

He says, in the first place, that the grantees could not legally have elected directors, without first having made or taken to themselves associates. But this position cannot be maintained. The grantees and their associates form the corporation. If there are no associates, then the grantees compose the corporation. The corporation may consist of them, or they may associate others with themselves in the exercise and enjoyment of the rights and privileges conferred by the act; or they may wholly assign its benefits to other parties. But the act does not require them to do

either. Its benefits belong to the grantees, or to the grantees and their associates, or to their assigns; and if they do not choose to receive associates, there is no ground for complaint, any more than there would be if they did not see fit to assign those benefits. The authorities cited by the defendants' counsel are in point, and confirm the obvious construction which they have given to the act of incorporation.

The second position taken by the plaintiff is, that the defendants were not chosen directors at the annual meeting of the corporation, in accordance with the provisions of the charter and by-laws, inasmuch as at the time when the election was made no by-laws had been enacted.

The 4th section of the act of incorporation provides that the government of the corporation shall be vested in a board of " directors, chosen by the members of said corporation at their annual meeting," &c.

The 10th section provides that these annual meetings for the choice of directors " shall be holden at such time and place, in this State, as may be provided by the by-laws."

On the last Saturday of July the grantees held the meeting called by the persons authorized by the act to call the first meeting, and transacted business in the following order: 1. They voted to accept the charter. 2. They elected directors. 3. They adopted by-laws, the first article of which provided that " the annual meeting of the corporation shall be holden on the last Saturday of July in each year," &c.

Now at the precise moment when the election of the directors took place, no by-laws had designated that day as the day of the annual meeting of the corporation. No time or place had been provided by the by-laws for holding the annual meeting. Nor would it have overcome the objection made by the plaintiff, if the adoption of the by-laws had preceded the election of directors on the same

day; because he says that an annual meeting, such as is prescribed by the by-laws for the choice of directors, cannot be called but by the agency of officers appointed by the directors.

No valid election of directors could, therefore, have been made under the present by-laws of the corporation, if the position assumed by the plaintiff is correct.

The election of directors and other suitable officers or agents, for the direction and government of the affairs of the corporation, and the conduct of its business through the agency of such officers, pertain to the condition and nature of aggregate corporate bodies. The creation of this corporation by an act of the legislature, which should have contained no provisions whatever for the choice of directors, or for the management of its affairs through the agency of such, would have implied all that is expressly conferred by the provisions which the act contains, except so far as those provisions relate to the time, place, or other modes to be observed by the corporation in the exercise of that inherent function. In requiring, therefore, that the immediate government and direction of the affairs of the company shall be vested in directors, to be chosen at the annual meeting, the law does not imply that elections held at other times shall be wholly void. The law is merely directory, and does not, in terms or by any implication, attach such a consequence to an omission or non-observance of the prescribed modes of exercising the power of electing directors.

This is illustrated by a case referred to in Rolle's Ab. 514. If the king create a corporation of a mayor and eight aldermen, with a clause in the charter, that, on the death or removal of any one of the aldermen, the mayor and the other aldermen may, within eight days, elect another in his place, in such a case, though no election be made within eight days, yet they may elect one at any time afterward; *for the power of election is incident to the*

*corporation*, and the affirmative power to elect within eight days does not take away the power implied as incident to the corporation. *Hicks* v. *Launaston.*

So in *The King* v. *Poole*, B. R. H. 27, which was to try the validity of the election of the mayor of Liverpool. The statute prescribed for the meeting the time between ten in the morning and two in the afternoon, and the election was not within those hours. Lord *Hardwicke* said that the statute was in that case directory only, and not restrictive, and was intended only to prevent surprise; and that where no surprise appeared to have occurred, an election, begun, or continued by adjournment to any other time, is good. This case is partially reported in Lord Hardwicke's Rep. 33, Cases Temp. Hardw. 23, and in 2 Barnard. 93.

In *Prowse* v. *Foot*, 2 Bro. P. C., where the mayor was eligible from among the aldermen, and these were required by the statute to be chosen annually, the statute was held to be directory only, and that persons remaining in office many years without reëlection were capable, as aldermen, of being elected to the office of mayor. To the same point is *People* v. *Runkin*, 9 Johns. 147.

I think that the provision in the act which prescribes that the directors should be elected at annual meetings only, is merely directory, and that it was not intended that the observance of that condition should be essential to the exercise of the power of election. *Rex* v. *Londule*, 1 Bur. 447; *Rex* v. *Leicester*, 7 B. & C. 12; Dwarris on Statutes 714.

But irregular elections are voidable only, and not void. These directors at most are only irregularly chosen. They are in under color of an election, and their acts, so long as they retain their offices, are binding. The legality of their election cannot be brought collaterally in question, but proceedings should be instituted for the express purpose of trying it, and of evicting them, if not properly

entitled to the offices which they have assumed to exercise. This bill is not such a proceeding. Its object is to restrain the defendants from exercising the offices which they actually hold; not because they are abusing their powers, but because they do not rightfully possess them. This cannot be done. *Trustees of Vernon Society* v. *Hill*, 6 Cowen 23. *The bill must, therefore, be dismissed.*