NEW YORK,
May, 1812.

THE PEOPLE *against* W. RUNKEL.

PEOPLE
v.
RUNKEL.

AN indictment for a *forcible entry and detainer* was found the
19th *June*, 1810, against the defendant and *John Runkel* and
*John Bicker*, since deceased, under the 3d section of the " Act to
prevent forcible entries and detainers." (Sess. 11. c. 6. See
8 *Johns. Rep.* 464—466.)

The indictment was tried at the *New-York* sittings, in *Decem-*
*ber*, 1811, before Mr. Justice *Van Ness.* The following facts, in ad-
dition to what appear in the report of the case, on a former motion
for a new trial, are all which it is thought material to state.

*George Gilfert*, a witness for the prosecution, testified, that the
trustees of the *German Reformed Church*, for many years pre-
vious to the 13th *June*, 1810, had the possession of the church;
that the trustees, according to the church government, were order-
ed by the consistory to take charge of the property, and lock the
church against *Runkel;* and the witness and two other trustees
were appointed a committee for that purpose, and that, in compli-
ance with the order of the consistory, the committee locked the
church and fastened the windows, and the witness took the keys,
which were, at the time of the forcible entry, and then were, in
his possession; that on the 11th of *June*, 1810, the trustees re-
ceived the following written demand of the records, papers and
property of the church. " *New-York, June* 11*th*, 4 *o'clock, P.*
*M.* 1810. We the subscribers, corporation of *The Reformed*
*Protestant High Dutch Church*, in *Nassau Street*, between *John*
*Street* and *Maiden Lane*, in this city, request and demand of you,
Messrs. *George Gilfert, Mathew Luff, Ludowick Sherman* and
*Engel Frennd*, late trustees of the *German Reformed Church*
aforesaid, and of all other persons whatsoever, all the keys, seals,
books, documents, bonds, papers, money, accounts, treasury, and
every thing and article and property, &c. belonging and apper-

The trustees
of an incorpo-
rated religious
society are,
*virtute officii*,
entitled to the
possession of
all the tem-
poralities, and
are consider-
ed as lawfully
seised of the
ground and
buildings be-
longing to
the church;
and if the
trustees close
the door of
the church a-
gainst the mi-
nister and con-
gregation, and
they break
and enter the
church, *by*
*force*, an in-
dictment, at
the instance
of the trus-
tees, will lie
against them,
for such *forci-*
*ble entry.*
In an indict-
ment for a for-
cible entry
and detainer,
it is enough if
the complain-
ants, or party
injured, and
the injury, are
stated with
sufficient cer-
tainty to ena-
ble the court
to ascertain
the injury,
and award re-
stitution; and
any variance,
not essential,

in the description or name of a corporation, will not vitiate the proceedings.
Where the trustees of a religious incorporation were required by statute, to be divided into
three classes, and the seats of one class were to be vacated at the expiration of every year, so
that one third should be " annually chosen," and that the time of the annual election should be,
at least, six days before the vacancies should happen; it was held that an election on *Pinxter*
*Monday*, (Monday after *Whitsunday*,) in each year, though a moveable holyday, and not a day
certain, was valid.
Where the *officers* of a corporation are required to be annually elected, *it seems*, that they may
continue in office after the year, and until others are elected.

NEW YORK,
May, 1812.

PEOPLE
v.
RUNKEL.

taining to said church or congregation. In virtue whereof, we have hereunto affixed our names and seals." Signed by *William Runkel* and eight others ; and the said defendant has continued to preach there ever since.

A certificate of incorporation was then produced, in the words following, to wit: " *City of New-York, ss.* We the subscribers, elders of the *German Reformed Church,* in the city of *New-York,* do hereby certify, that the members of the said church, having been duly convened on the 31st day of *May,* last past, agreeably to, and for the purposes mentioned in an act of the legislature of this state, passed on the 6th day of *April* last, entitled ' An act to enable all the religious denominations in this state to appoint trustees, who shall be a body corporate, for the purpose of taking care of the temporalities of their respective congregations, and for other purposes therein mentioned,' did, in pursuance of the said act, proceed to the election of the said trustees, and that, upon the votes of the said members of the said congregation then and there assembled being taken, the following persons were, by a plurality of voices, elected to that office, namely, *Henry Whiteman, Christopher Fregueheim, Frederick Weissenfels, William Lionhard, William Snyder, Frederick Bocdigee, Christian Will, George Dietrick,* and *Anthony Apple,* and we do hereby certify, that it was then and there unanimously agreed, that the style and name by which the said trustees and their successors should be thereafter known, should be by the style and name of ' *The Corporation of the German Reformed Church, in the city of New-York.*' In witness whereof, we the said elders have hereunto set our hands and seals, this ninth day of *June,* in the year of our Lord one thousand seven hundred and eighty-four, and of the independence of the state the eighth." Signed, *Henry Will* and *Jacob Spray.*

" *Be it remembered,* that on the eleventh day of *June,* one thousand seven hundred and eighty-four, before *John Sloss Hobart,* one of the justices of the supreme court of judicature for the state of *New-York,* came and appeared *John Mildollar,* one of the subscribing witnesses to the aforegoing certificate, who being duly sworn, deposed that the aforenamed *Henry Will* and *Jacob Spray* signed and sealed the same in presence of *Andrew Rode* and the deponent, and that the said *Andrew Rode* signed his name as a witness thereto, in presence of this deponent; and I

having inspected the same, and finding no alterations therein, do order it to be recorded.         " *John Sloss Hobart.*"

" Recorded in the office of the city and county of *New-York*, this 11th day of *June*, 1784.

(Signed)         " *Robert Benson*, Clerk."

It was objected, on the part of the defendant, that the evidence varied from the record, in the style of the corporation, but the objection was overruled by the judge.   Mr. *Gilfert* testified, that *George Gilfert, Mathew Luff, Ludowick Sherman* and *Engle Frennd,* were the trustees of the *German Reformed Church* in the city of *New-York*, at the time the consistory of that church gave orders to lock the church against *Runkel*, and at the time of the entry by the defendant.

The defendant then gave in evidence his *call*, by the congregation of the said church, which was attested by the chairman of the board, at the meeting of the corporation, on the 25th day of *August*, 1805.

To show that the corporation of the *German Reformed Church* was dissolved, the defendant proved, that the election for trustees had always been held on *Pinxter Monday.*

The defendant further proved, that part of the congregation attached to Mr. *Runkel* assembled on the 23d of *May*, 1810, incorporated themselves, under the act of the 27th of *March*, 1801, styling themselves *The Minister, Elders and Deacons of the Reformed Protestant High Dutch Church,* the certificate whereof was in the words following, to wit:

" By virtue of the act of the legislature of the state of *New-York,* entitled ' An act to provide for the incorporation of religious societies,' passed the twenty-seventh day of *March*, one thousand eight hundred and one, we the minister, elders and deacons of the *Reformed Protestant High Dutch Church,* in the city of *New-York*, in *Nassau Street*, between *John Street* and *Maiden Lane*, and our successors for ever, shall, as a body corporate, be called, distinguished and known, by the name, style or title of ' *The Minister, Elders and Deacons of the Reformed Protestant High Dutch Church in the city of New-York.*'   Given under our hands and seals, the twenty-third day of *May*, in the year of our Lord one thousand eight hundred and ten."   Signed by *William Runkel* and eight other persons.

*Peter Dob* was then produced and sworn, who proved that the church was opened by the order of the new corporation, and a

NEW YORK,
May, 1812.

PEOPLE
v.
RUNKEL.

large majority of the congregation. He further proved, that in March, 1810, a partial meeting of the congregation was called by the old trustees, at which a motion was made for the dismissal of Mr. *Runkel* from the ministry of the church, and two papers prepared, one to be signed by those in favour of his being discharged, and the other by those against it. That thirty-three persons, some of whom were not stated hearers of the church, signed the paper for the discharge of Mr. *Runkel,* but such of Mr. *Runkel's* friends as were present, thinking the proceedings irregular and highly improper, refused to vote upon the question. He further said, that there was a majority of the congregation in favour of Mr. *Runkel.* On his cross-examination, he stated that at a meeting of the new congregation, it was proposed by some one, that *Aymar,* the blacksmith, should be sent for to open the church, but he did not recollect that the proposition was made by Mr. *Runkel ;* that it was determined that the church should be opened, and it was known, at that time, that the church was locked against Mr. *Runkel.* It appeared that Mr. *Runkel* was present at this meeting.

On the part of the prosecution, the Rev. *Gerardus Kuyper,* a minister of the *Low Dutch Church,* proved that the *German Reformed Dutch Church* was considered as forming a member of the *Classis* of *New-York,* in the ecclesiastical government of the *Reformed Protestant Dutch Church, in North America,* and was considered subject to the jurisdiction of the *Classis* of *New-York ;* that by the constitution of the *Reformed Dutch Church,* no *call* of a minister is valid, unless approved of by the *Classis,* nor can a minister be legally confirmed, without the order of the *Classis ;* that no church or consistory can withdraw itself from the *Classis,* without permission from that body. He further proved that Mr. *Runkel's* call had never been approved by the *Classis* of the *Low Dutch Church.* The minutes of the proceedings of the *Classis* were produced, by which it appeared, that from the year 1772 to 1775, that church had been regularly represented, annually, in the said *Classis ;* that from 1776 to 1783, during the revolutionary war, no minutes were kept ; that in 1784, the church was not represented ; that in 1785, the congregation withdrew itself from the dominion of the *Classis,* but the *Classis* never assented thereto ; that in 1797, there was a proposal made by the *Classis* for a reunion with the said church, to which no answer was received, until the year 1800, when the proposition was agreed to ; and an

entry was produced, in the minutes of the consistory of the *German Reformed Church*, whereby it appeared that the consistory of that church unanimously assented to the reunion; and representatives were sent to attend a meeting of the *Classis ;* that the said church was regularly represented in the *Classis*, from the period of its reunion, until the year 1805; that in the year 1801, a minister was called by the congregation, whom the *Classis* disapproved, and refused to confirm, but he nevertheless preached for some time, until his decease. Mr. *Kuyper* further proved, that in 1805 there was no dismissal of the said church from the government of the *Classis*, neither was there any in 1785. He further testified that Mr. *Runkel* had never appeared in the *Classis* of the *Reformed Dutch Church* in *New-York*.

*John Frederick* testified, that he was a member of the consistory of the *German Reformed Church*, in 1805; that they had been for some time without a minister, from the difficulty of procuring one who could preach both in *English* and *German ;* that at length the congregation assembled and called Mr. *Runkel ;* that the consistory were opposed to the call of Mr. *Runkel ;* that Mr. *Runkel*, immediately on his arrival, refused to acknowledge the authority of the *Classis* of *New-York*, or to sign the articles of faith of that church, which produced some dissatisfaction among the congregation, and those who were dissatisfied left the church; that Mr. *Runkel* recognised the consistory as the spiritual governors of the church; that the old consistory served a year after Mr. *Runkel* came, and the witness, at the expiration of the year, was reappointed a member of it; that at the first meeting of the consistory, after Mr. *Runkel's* coming to *New-York*, upon his call, it was proposed to him, by the consistory, to join the *Classis* of *New-York*, and to have his call approved by the *Classis*, which he wholly refused, alleging that the *German Reformed Church* was subject to the *Synod* of *Pennsylvania ;* that he would not recognise the authority of the *Classis* of *New-York*, and did not assent to their doctrines; that only fifty-five voted for calling Mr. *Runkel*.

*Adam Bergh* proved, that by the constitution of the *German Reformed Church* there were two bodies, viz. the *trustees*, who form the body corporate, and have the charge and custody of the temporalities of the church, and the *consistory*, consisting of the *elders* and *deacons*, who manage the spiritual concerns of the

NEWYORK,
May, 1812.

PEOPLE
v.
RUNKEL.

church; that the members of the *consistory* are appointed by their predecessors in office, and it had often happened, that persons who were *trustees,* were also appointed to be of the *consistory;* that it is the duty of the minister to publish the names of the, *consistory,* for the ensuing year, for three successive *Sundays,* preceding their installation, and if no valid objection is made, to instal them; that in the year 1810, certain persons had been nominated to be members of the *consistory* for the ensuing year, and that Mr. *Runkel* published them for one *Sunday,* but refused to do so on the second and third, or to instal them; that some of the members appointed were also trustees; that a meeting of the consistory was called, in *January,* 1810, and objections there made to the conduct of Mr. *Runkel,* in refusing to publish and instal the new members; that Mr. *Runkel* alleged that the congregation attached to him opposed their installation, on the ground that they were also trustees. The consistory resolved that the reason for refusing to publish and instal the proposed members, was insufficient, and that the consistory were the proper tribunal to judge of the sufficiency of objections made to proposed members, and that unless he did publish and instal the proposed members, they would no longer consider him as their minister; that Mr. *Runkel* thereupon declared that he would not instal the proposed members, and withdrew from the meeting, on which they elected a chairman, and passed a resolution, that Mr. *Runkel,* having refused to publish and instal the proposed members for the consistory, and having otherwise misconducted himself, could no longer be considered the minister of the *German Reformed Church,* and that notice should be given to the trustees to take measures for the security of the property, and to lock the church against him; which resolution was communicated verbally to the trustees, by the members of the consistory.

Mr. *Kuyper,* who was again examined, said, that he did not think there could be a legal consistory, without a presiding minister, but there might, perhaps, be a consistory, without the minister, in an independent church, but of this he had doubts; that if a minister opened a meeting of the consistory, and his conduct becoming the subject of discussion, withdrew himself, the members so convened could not legally pass upon it. He further added, that the consistory had no power to dismiss a minister; but it might be different when there was but one minister to a congregation.

It was admitted, that none but the friends of Mr. *Runkel* had notice to attend the meeting of the 23d *May*, 1810, when the new corporation was formed.

The Rev. Mr. *Mildollar* testified, that he was the minister of the church for several years preceding Mr. *Runkel* ; that the call of the witness was approved by the *Classis*, and he always considered himself subject to their jurisdiction, and he represented the *German Reformed Church* in *New-York*, in that body ; that that church was not subject to the *Synod* of *Pennsylvania ;* that he was called from that church to *Pennsylvania*, and his removal was with the approbation of the *Classis* of *New-York*.

The questions of law arising on the evidence were reserved, by consent, and the question of force submitted to the jury, who found a verdict against the defendant.

*Bristed*, for the defendant, contended, 1. That there was a material and fatal *variance*, as to the style and title of the corporation, between the indictment and the evidence given at the trial. The indictment states, that " the trustees of the *German Reformed Church* in the city of *New-York*," were seised, &c. and the certificate of incorporation declares, that the trustees and their successors should be known by the style and name of the " corporation of the *German Reformed Church* in the city of *New-York*."

The act for the incorporation of religious societies, (sess. 24. c. 79. s. 4.) empowers them to sue and be sued by their corporate name and title. A corporation can do no legal act, but in its true name and title.* And if judgment be given against them, by a wrong name, it is error.† A corporation must prove itself such, and its true name, at the trial, by producing its charter of incorporation.‡

2. The law deems the possession to be in the legal trustees.§ The important question then is, who were the legal trustees? The church was first incorporated, under the act of the 6th *April*, 1784.** (Sess. 7. c. 18.) The trustees are to continue in office for three years from the day of their election. (S. 7.) These trustees are to be divided into three classes, and the first class are to go out at the end of the first year, so that one third of the trustees must be chosen annually. The election must take place on a day certain. Now the elections took place on *Pinxter Monday*, which being the *Monday* next after *Whitsunday*,

* *Kyd on Corporations,* 227—303. 10 *Co.* 122. b. 124. b. 125. a. *Moore*, 285—287. *Bro. Ab. Corp. l.* 65. 2 *Bulst.* 185. 2 *Salk.* 451. 3 *Salk.* 103. Ld. *Raym.* 1515. 2 *Stra.* 187. *Cowp.* 26. 29.
† Lord *Raym.* 119.
‡ *Hob.* 211. Lord *Raym.* 1535.
§ S. C. 8 *Johns. Rep.* 464. 469.
** *Greenleaf's* edit. *of Laws,* p. 71.

NEWYORK, May, 1812.

PEOPLE
v.
RONKEL.

a moveable festival, is not a certain day. A non-election of trus-tees on the day fixed by the charter, works a dissolution of the corporation, at common law; and there is no provision in the act relative to the incorporation of religious societies, (sess. 24. c. 79.) that provides against a dissolution for that cause.

In all the special charters of incorporation, granted by the legis-lature, there is a provision that a non-election, at the day, shall not work a forfeiture. This shows, that where no such provision is made, a non-election, at the day, must produce a forfeiture; for no election can be held but on the charter day. The statute of 11 *Geo.* I. c. 4. was passed to remedy that inconvenience, in regard to corporations in *England.** There is no such statute in this state. If, then, there was a dissolution of the corporation, the persons at whose instance this prosecution is carried on, have no right. And the case shows that the defendant and his associates were duly and legally incorporated under the act of 27th *March*, 1801. (Sess. 24. c. 79. s. 11.) The defendant and his associates, there-fore, were the legal trustees.

Again, the defendant was, and is, the lawful minister of this church. He was duly *called*, by a majority of the congregation, in 1805. He could not be dismissed, without the sentence of a competent *ecclesiastical* tribunal. In the *Low Dutch Church*, the only competent tribunal is the *Classis*. In the *High Dutch Church*, it is the *Synod*. The *consistory* are neither a *Synod* nor a *Classis*. Admitting, therefore, that the old corporation was not dissolved, their proceedings were irregular and illegal, and ought not to have any effect in a court of justice. Every minister is bound to act, preach and teach according to his contract. If he does not, that is to be decided by the proper tribunal of the church of which he is a minister. Here the defendant was vio-lently ejected from his church, by the trustees, in union with the consistory. *Lay* patronage in *England* is mischievous and bad enough; but this multitudinous *lay* patronage, if tolerated, must produce infinitely greater mischiefs. *Lay* trustees are not amena-ble to the superior ecclesiastical tribunals, and being possessed of the temporalities, they may eject a minister, at their pleasure, for the very reason, perhaps, that he preaches the purest and soundest doctrines of christianity, and with a view to introduce deism, atheism and every other abomination in their place.

1

* *Kyd on Corporations,* 452—517. 3 *Term Rep.* 220. 8 *Mod.* 129. 3 *Burr.* 1866. 10 *Mod.* 346. *King* v. *Amery,* 2 *Term Rep.* 515. 4 *Term Rep.* 122.

*Colden*, contra, insisted, 1. That the alleged *variance* was immaterial. But there is, in fact, no variance; for the true name of the corporation is, " the *Reformed Dutch Church* in *New-York*," and the words " *trustees of* " in the one, and " *corporation of* " in the other, do not form part of the corporate name. The words in the indictment are not intended as an exact description of the corporation, but are merely to show who had the custody of the temporalities.

Again, though where a corporation is a party to a suit, it must be exactly described by its corporate name, yet that precision is not required, where the corporation is only referred to in a suit in which it is not a party. It is sufficient if there be words of description enough to identify the corporation.*

2. In the written demand made by the defendant and his associates, on the 11th *June*, 1810, they recognise *Gilfert and the others*, as trustees, and they call on them to deliver up the books, records and keys.

The objection as to the old corporation being dissolved, because the election was on *Pinxter Monday*, and not on a day certain, in each year, can have no effect; for the old trustees might hold over until new ones were elected. Besides, according to the statute, only one third of the trustees were to be elected annually.

(Here he was stopped by the court.)

> * 1 *Kyd on Corp.* 227. 2 *Bac. Abr. Corp.* (C. 2. 5.)

*D. B. Ogden*, in reply, observed, that though this action was, in its form, a criminal suit, in the name of the people, yet, in truth, it was a civil suit for the benefit of the trustees, who are the real plaintiffs. It was, therefore, equally necessary that the corporation should be described by its true and legal name.

Again, whatever may be the legal name of the corporation, the prosecutors are bound to show that they are the trustees; but there is no evidence of that fact. The minutes of the corporation ought to have been produced. The letter of the defendant and his associates calls them the *late* trustees, and does not admit the fact that they are the actual trustees.

If the prosecution is considered as well founded, the court must award restitution. But to whom is restitution to be made? It does not appear that the corporation is now existing.

Again, are not the minister and congregation entitled to the possession of the church, for the purpose of public worship?

Is it fit, or consistent with the public good, that the trustees should turn the minister and congregation out of the church?

*Per Curiam.* The two objections to the verdict which may seem to deserve examination, are, 1. The alleged variance between the indictment and the evidence, as to the name of the corporation; and, 2. That by an irregularity in the election of trustees, the corporation of 1784 was dissolved, and the complainants, who assumed to be trustees under that incorporation, were not the lawful trustees.

If these two points are decided against the defendant, the motion on his part must be denied; for according to the provisions of the statute for *the incorporation of religious societies*, and according to the opinion of the court, when this cause was formerly before it, (8 *Johns. Rep.* 464.) the trustees have the possession and custody of the temporalities belonging to the church, whether the same consist of real or personal estate. They must, therefore, be considered as being, *virtute officii*, entitled to the possession, and as lawfully seised of the ground, and of the buildings belonging to the church, and the merit or demerit of their conduct, in closing the doors of the church against the defendant, cannot be taken into consideration in this case. If they have abused their trust, the congregation, who are their constituents, have ample remedy; but this remedy does not consist in a forcible entry upon their possessions. Though the trustees hold the church property in trust for the church and congregation, still it is *their* possession; and the courts are bound to protect them against every irregular and unlawful intrusion made against their will, whether by members of the congregation or by strangers.

1. The proceedings under the statute to prevent forcible entry and detainer, are of a peculiar and anomalous kind. They are loose, and of a mixed nature, being in substance a civil, and in form, a criminal prosecution. The formal parties to the record are the people and the trespasser; and the injured party and his interest need only be stated in the indictment with sufficient certainty, to enable the court to ascertain the injury, and to award restitution. If the complainant be designated sufficiently for this purpose, it is enough; any further technical precision which the forms of pleading might otherwise require, seems not to be requisite. In this case, the trustees of the church have a corporate name by which

NEWYORK,
May. 1812.

PEOPLE
v.
RUNKEL.

they are to sue or be sued, and this corporate name is " *The Corporation of the German Reformed Church in the city of New-York.*" In the indictment they are not described exactly by that name, but as " *The Trustees of the German Reformed Church in the city of New-York.*" It has been suggested that the corporate name begins with the words *The German Reformed, &c.* and if so, there was no variation. But admitting that the name begins with the words *The Corporation,* the variation does not appear to be essential, for the corporation, *qua* corporation, is not the plaintiff upon the record. The trustees are known and designated in the statute, by the name of *trustees.* They are so called throughout the statute; and by the 4th section of the act of 6th *April,* 1784, they are declared to be trustees for the church for which they shall be chosen, and are authorized to take into their custody and possession, all the temporalities belonging to the church for which they should be elected trustees, whether the same consist of lands, &c. In this case, the trustees not being parties to the record, we are not obliged to require them to be described with rigorous precision. We may adopt the more reasonable rule laid down by *Kyd,* (on *Corporations,* vol. 1. 286. 288.) that *the variance must be materially different, in substance, to injure.* This doctrine is to be met with in the books. Thus it is said, (*Com. Dig.* tit. *Pleader,* 2. B. 2.) that if a personal action be brought against a corporation, and they plead misnomer, the plaintiff may reply that they were known *as well by the one name as by the other.* And Lord *Coke,* says, (10 *Co.* 125. b.) " that in pleading, or in a special verdict, in many cases, if by express averment, or by the finding of the jury, it shall be made apparent to the court, that the true name of the incorporation, and the name in the lease, grant, &c. are all one, in effect, it will much enforce the matter; although, in words, there is some seeming of difference." The trustees of the church are better known by the name of trustees, than by any other corporate name. It is the name given them in all the statutes which relate to religious incorporations. The church is here truly designated, and the difference between *the corporation* of that church, and *the trustees* of that church, is not an essential variation, in a case like this, where they are not the formal parties to the record.

2. It was proved that the election of trustees " had always been held on *Pinxter Monday.*" This was not an exact annual election, as *Whitsunday* is a moveable holyday, and varies with the

NEW YORK,
May, 1812.

PEOPLE
v.
RUNKEL,

time of *Easter Sunday*, but that fact does not prove the corporation to have been thereby dissolved. In the first place, there was always a majority of the trustees in office, as only one third part were to be annually chosen. The act of 1784 did not prescribe the precise time when the trustees were to be chosen. The trustees first to be chosen were to continue in office " for the space of three years, to be computed from the day of their election," and were to be divided into three classes, and the seats of one class were to be " vacated at the expiration of every year;" so that one third might be " annually chosen." The time of the annual election was to be appointed by the minister, and was to be " at least six days before the vacancies should happen."

The church having fixed upon a yearly religious epoch for the election of trustees, it would be very revolting to hold the corporation absolutely dissolved, from the very first time that the elections were so held, and that all its subsequent elections and acts were void, merely because the holyday selected for the election did not correspond with the solar year. We cannot, with propriety, have any annual election that will so correspond, because the calendar day will frequently be the day of the *Christian* sabbath, and a given day of the week, in any month, would not agree precisely with the solar year. We must give the statute a reasonable and liberal construction, for the benefit of the churches. Neither a precise day of election, or of entering upon office, is given. There are many decisions in the books showing that the election in such cases will be valid, if made after the year, and especially, if an integral part of the corporation remains. Thus, in the case of *Hicks* v. *The Town of Launceston*, (*H. B.* 8. *C.* 1. 1 *Roll. Abr.* 512. 514.) it was held, that though by a charter of incorporation, the vacancy occasioned by the death or removal of an alderman, was to be supplied by an election within eight days thereafter, yet an election at any time, afterwards, was good; for the power of election was incident to the corporation, and the affirmative power to elect within eight days did not take away the implied power. So, in the case of *Foot* v. *Prowse, Mayor of Truro*, (*Str.* 625.) it was decided, in the exchequer chamber, and afterwards affirmed in the house of lords, that though the aldermen of *Truro* were to be *annuatim eligend.* these words were only directory, and the aldermen were good officers after the year, and until others were elected.

Again, in the case of *The Queen* v. *Corporation of Durham*,

(10 *Mod.* 146.) the court of K. B. said, that though a town clerk be *annuatim eligibilis,* he remains town clerk, after the year, and until another was chosen; but if he had been *eligibilis pro uno anno tantum,* his office would have expired at the end of the year.

It is unnecessary to contend, in this case, that the trustees held over, after the expiration of the year. Perhaps the language of the statute is too peremptory, that the seats of one third are to be " vacated at the expiration of every year." But the corporation is not thereby dissolved, for two thirds of the trustees continue in office, and the election of the successors to those whose seats expire, cannot be deemed void, though it might sometimes happen, in consequence of the moveable *Whitsunday,* that the election was not " at least six days" before the vacancy. The trustees so elected would, at least, be trustees, by colour of office, and their acts would be good. The corporation still remains, and the irregularity, (if any,) as to the time of the election, would cure itself in the subsequent year. Whether any part of the trustees in office at the time of the trespass, and of the indictment found, came in by an election held within the six days, or after the year, &c. does not appear. In no point of view, therefore, is there any ground to consider the proceedings as irregular, on the pretence of the dissolution of the corporation, or from the want of competent trustees.

Motion denied.

N. B. It was suggested that the defendant ought to be *fined,* and restitution awarded. *The Court* said, they awarded restitution, and assessed the damages at *six cents,* so as to carry the costs; but the statute did not require this court to set a fine.