THE CONSISTORY OF THE REFORMED DUTCH CHURCH OF PRATTSVILLE *vs.* NICHOLAS BRANDOW, Executor, &c. and others.

A testator, by the seventh clause of his will, devised and directed as follows: "I give and bequeath to the consistory of the Reformed Dutch Church of Prattsville, that is, to the ministers, elders and deacons, and their successors in office, the sum of five hundred dollars, to be held, used or invested for the benefit and use of the said church in such manner as they deem best for the interest of the church. If, however, by the laws regulating the said church at the time of my decease the said sum of five hundred dollars cannot be held, used or invested by the said consistory independently of other persons acting, or assuming to act as trustees, then this bequest to be void and of no effect, and the said sum of five hundred dollars is to be disposed of in the same manner as the residue of my personal estate herein mentioned." The eighth clause of the will directed and required the testator's son L. to pay to his executors the said sum of $500, and when received by them as executors, required them to pay it over to the consistory.

The Reformed Dutch Church of Prattsville was first organized and incorporated June 15, 1802, reorganized and incorporated October 31, 1820, and again reorganized and incorporated December 10, 1835, pursuant to the provisions of the act of April 15, 1835. There had been an acting board of trustees for the church, from 1835 to the present time, and also an acting consistory from the first organization of the church to the present time, composed of the ministers, elders and deacons; but from November 18, 1850, to October 15, 1859, there was no record of any election of elders and deacons, in the consistory books. It appeared that the Reformed Dutch Church of Prattsville was the corporation referred to in the will, and that it was legally incorporated under the laws of the state, with all the powers and privileges belonging to religious corporations.

*Held* 1. That the testator clearly intended, by the seventh clause of his will, that the Reformed Dutch Church of Prattsville should have the benefit of the bequest made by him to the consistory, provided the consistory could control the bequest.

2. That the benefaction of the testator could be lawfully and properly disposed of by and through the hands of the consistory; they having a perfect right to exercise entire control, independently of the board of trustees, over all moneys belonging to the church, which had been contributed for charitable purposes.

3. That in reference to such funds, the consistory constituted a separate and independent body, having unlimited control; and that they could sue and be sued, or do any lawful act or thing, which was essential to carry out the objects for which the funds were designed

Consistory of the Reformed. Dutch Church of Prattsville *v.* Brandow.

4. That the consistory were a body who were authorized to take by bequest; and that the bequest to them was a gift to competent trustees, who had power and authority to execute the trust, and to dispose of the fund.

5. That a bequest to the consistory was in effect a bequest to the church corporation itself; and was not the less so because it was made to those officers.

6. That the consistory had ample power to dispense this sum for charitable purposes, and such purposes would be for the use and benefit of the church, within the terms of the bequest.

7. That the discretionary power vested in the consistory, to dispose of the fund as they might deem best for the interest of the church, must be construed to mean, as they deemed best, within the scope of the authority and powers conferred upon them by the constitution of the church and the exception in section 4 of the act of April 15, 1835, for the incorporation of religious societies.

8. That the act of 1835, section 4, which provides that after trustees of a religious society shall have been elected, &c. the right and power of administering, enjoying and disposing of the temporalities of the church shall be transferred from the consistory to the trustees, "except the fund raised, or to be raised, by charitable contributions *in said church* for the benefit of the poor thereof, commonly called the deacons' fund," was not intended to embrace, in the exception, only such donations as should be made within the walls of the church edifice itself, and to exclude all which should be bestowed outside of the building.

9. That the objection that the executor could not be decreed to pay the $500 to the church unless he could collect it from the estate of L. who by the eighth clause of the will was directed to pay it to them, could not be raised on appeal from the decree of the surrogate; it not having been raised or considered below; and it appearing that there were sufficient assets in the hands of the executors to pay the legacy, if the consistory were entitled to receive it.

10. That inasmuch as the trustees and officers of a religious corporation hold over until others are chosen in their places, it was no objection to the right of the consistory to recover the legacy, that there was no proof showing any election of a consistory for several years; it appearing that during all that time there had been an acting consistory, composed of the ministers, elders and deacons.

11. That that question could not be raised collaterally, on appeal from a decree of the surrogate made upon the final accounting of the executor; that it could only be presented by a direct proceeding for that purpose.

12. That there being a consistory *de facto*, at the time of the testator's death, and being such by color of office, their proceedings were valid until they were ousted by a judgment at the suit of the people.

APPEAL from a decree of the surrogate of Greene county, made upon the final accounting of the respondent, Nicholas Brandow, as executor, &c. of John Brandow, deceased.

It appeared before the surrogate that on the 13th day of September, 1855, John Brandow executed his will, by the seventh clause of which he gave and bequeathed to the consistory of the Reformed Dutch Church of Prattsville, Greene county, N. Y. $500, which clause is in the following language:

"I give and bequeath to the consistory of the Reformed Dutch Church of Prattsville, that is, to the ministers, elders and deacons, and their successors in office, the sum of five hundred dollars, to be held, used, or invested for the benefit and use of the said church, in such manner as they deem best for the interest of the church. If, however, by the laws regulating and governing the said church at the time of my decease, the said sum of five hundred dollars cannot be held, used or invested by the said consistory independently of other persons acting, or assuming to act as trustees, then this bequest to be void and of no effect, and the said sum of five hundred dollars is to be disposed of in the same manner as the residue of my personal estate herein mentioned."

The eighth clause of the will directed and required the testator's son, Lucas E. Brandow, to pay to his executors the said sum of five hundred dollars, and when received by them as executors, required them to pay it over to the consistory.

The will of John Brandow was duly admitted to probate by the surrogate of Greene county, April 7, 1859.

The Reformed Dutch Church of Prattsville was first organized and incorporated June 15, 1802, under the name of the Low Dutch Church of Schohariekill and Blenheim, and was reorganized and incorporated October 31, 1820, under the name of the "Ministers, Elders and Deacons of

the Reformed Dutch Church in Windham at the Schoharie-kill in the county of Greene." And was again reorganized and incorporated December 10, 1835, pursuant to the provisions of the act of April 15, 1835, under the name of the Reformed Dutch Church of Prattsville. It appeared that there had been an acting · board of trustees for the church from 1835 to the present time, and that there had also been an acting consistory from the first organization of the church to the present time, composed of the ministers, elders and deacons, but from November 18, 1850, to October 15, 1859, there is no record of any election of elders and deacons in .the consistory books. It also appeared that the Reformed Dutch Church of Prattsville is the corporation referred to in the will, and that it is legally incorporated under the laws of the state, with all the powers and privileges belonging to religious corportions.

The surrogate held that the bequest of five hundred dollars was void and of no effect, under the provisions of the will, and that neither the consistory nor the church were entitled to the bequest; and made a decree accordingly and for the distribution of the balance in the executors' hands among the residuary legatees. The consistory appealed from the surrogate's decree to the general term of the Supreme Court.

*A. J. Parker,* for the appellants.

*J. B. Olney,* for the respondents.

*By the Court,* MILLER, J. The testator clearly intended by the seventh clause of his last will and testament, that the Reformed Dutch Church of Prattsville should have the benefit of the bequest made by him to the consistory, provided the consistory could control the bequest. The question then arises, whether this can be done by a disposition of his benefaction by and through the hands of the con-

sistory of the church. I am inclined to think that it can be lawfully and properly disposed of by these officers, and will proceed to state the reasons which have brought my mind to this conclusion.

The Reformed Dutch Church of Prattsville was organized in 1802, and the consistory was cotemporaneous with its organization. In 1835, under the act of April 15, of that year, a board of trustees was elected, and from that time the church appears to have had two sets of officers. There is a distinction between the powers of these two classes of officers, and their duties are not entirely of the same character. By section 4, of chapter 90, Session Laws of 1835, an act for the incorporation of religious societies, after trustees are elected and have met and organized, as contemplated by the act, the right and power of administering, enjoying and disposing of the temporalities of the church is transferred from the consistory to the trustees, " except the fund raised or to be raised by charitable contributions in said church for the benefit of the poor thereof, commonly called the deacons' fund." The right to disburse the fund raised by charitable contributions is thus retained in the hands and under the control of the consistory, by express enactment, and with this fund the trustees have nothing to do. By chapter 1, article 3, section 2, of the constitution of the Reformed Dutch Church it is provided that the office of the deacons is " diligently to collect all alms and other moneys appropriated for the use of the poor, and with the advice and consent of the consistory, cheerfully and faithfully to distribute the same to strangers as well as those of their own household," &c. and " should more be collected than the necessities of the poor may require, such surplus may, with the consent of the consistory, be devoted to other purposes connected with the wants of the church." Under this provision of the constitution, the consistory had the power to supervise the disposition of the poor fund, and

with their consent any surplus might be disposed of, for the advancement of other objects connected with the church, besides those for which the fund was originally bestowed. They had a perfect right to. exercise entire control over all moneys belonging to the church, which had been contributed for charitable purposes; and this control was independent of the board of trustees. The power of the trustees was restricted to the temporalities, and embraced those matters which related to the ordinary business of the church, but did not extend to the funds contributed for charitable purposes. In reference to these funds, I think the consistory constituted a separate and independent body, having unlimited control; who could sue and be sued or do any lawful act or thing which was essential to carry out the objects for which the funds were designed.

Having briefly stated the relative positions of these two bodies, it is important to examine the character of the bequest, in order to determine whether it is a valid one, and whether its distribution can be lawfully made by the consistory. I think that they were a body who were authorized to take by bequest; and that a bequest to them was a gift to competent trustees, who had power and authority to execute the trust, and to dispose of the fund in accordance with the decisions of the highest tribunal of this state. (*Beekman* v. *Bonsor,* 23 *N. Y. Rep.* 310. *Williams* v. *Williams,* 4 *Seld.* 525.   *Bascom* v. *Albertson,* 34 *N. Y. Rep.* 584.)

A bequest to the consistory was in effect a bequest to the church corporation itself, and was not the less so because it was devised to these officers. (*New York Inst. for the Blind* v. *How's Ex'rs* 6 *Seld.* 84–92 *and cases cited.*) I discover no reason why the bequest was not a valid one, provided it came within the limits of their authority to dispose of it. By the will of the testator, the legacy was for the benefit and use of the church, in such manner as the con-

sistory deemed best for the interest of the church. I think that the consistory had ample power to dispense this sum for charitable purposes, and such purposes would be for the use and benefit of the church. To some extent, at least, it would save the necessity of other contributions for that object, and those donations which were thus intended might be appropriated for other purposes, and thus a benefit be conferred upon the church. If more funds were realized in this direction than was absolutely required, the consistory, by virtue of section 2 of article 3 of the constitution, before cited, would be authorized to appropiate them for other objects, which would be of advantage to the church, as had been its custom previously, and, as would seem, might perhaps be necessary to prevent an undue accumulation of this particular fund in their hands. The constitution was in force when the act of 1835 was passed, and the statute, in making an exception in favor of the fund raised for charitable contributions, must be considered in reference to the constitution as it then was, and as reserving all the rights and powers which then existed, as to the fund in question. The statute does not limit in any way the application of this fund for any specific purpose, and must be regarded, I think, as not intended to restrict its appropriation to any purpose different from what was sanctioned by the constitution of the church. The discretionary power vested in the consistory, which conferred upon them a right to dispose of the fund as they might deem best for the interest of the church, must be construed to mean, and such, no doubt, was the intention of the testator, " as they deemed best" within the scope of the authority and powers conferred upon them by the constitution of the church and the statute referred to.

It is said that the legacy is not a charitable contribution *in the church.* It is certainly a contribution for the benefit of the church, and as it is bequeathed directly to the consistory and they have the power to dispense charity, for

the benefit of the poor, I think it may be considered as a portion of the fund which they are authorized to hold and dispose of. They had a right to appropriate it for the benefit of the poor, if they deemed that proper and. advantageous. And so long as it was bequeathed to them and they had the power, under certain contingencies, to appropriate it for other purposes, it does not, I think, impair its validity because the testator did not specifically limit the application of the bequest.

It is further urged that it was not raised by contributions "in the church," as it was donated outside of it. I scarcely think that the statute was intended to embrace only such donations as should be made within the walls of the church edifice, itself, and to exclude all which should be bestowed outside of the building. Such an interpretation would be narrow and restricted, and would exclude any contribution from an individual who was not actually present, and who preferred to dispense his charity to some of the officers, while not there. Such clearly could not have been the intention of the statute.

A point is pressed upon our attention to the effect that the executor cannot be decreed to pay the legacy to the church unless he can collect the amount from the estate of Lucas E. Brandow who was to pay it to the executors, under the eighth clause of the will. No such point appears to have been taken before the surrogate, and it is not discussed in his opinion. In fact he considers the simple question whether the consistory, or the residuary legatees, are entitled to the legacy. It also appears from the return to the appeal that sufficient assets of the estate properly applicable to the legacy had come to the hands of the executors, if the consistory were entitled to receive it. Upon these conceded facts, it is evident that the objection is not a valid one.

It is also insisted that there was no election of a consistory for several years prior to the proof of the will in

1859, and there being no consistory in existence when the will took effect, the bequest was invalid. Although the record of the church does not show any election of a consistory between November, 1850, and October, 1859, there was positive proof before the surrogate that for a period of thirty-two years, embracing the time above stated, there had been an acting consistory, composed of the minister, elders and deacons. Even if no election had been had, which is not to be regarded as established, as the evidence stands, the trustees and officers of a religious corporation hold over until others are chosen in their places. (*The People* v. *Runkle*, 9 *John.* 147. 10 *Modern*, 146.) But the question cannot be raised collaterally, upon this appeal. It can only be presented by a direct proceeding for that purpose. There was a consistory *de facto* at the time of the testator's death, and being such by color of office, their proceedings are valid until they are ousted by a judgment at the suit of the people. (*See* 9 *John.* 147; *Trustees of Vernon Society* v. *Hllis*, 6 *Cowen*, 23; *Slee* v. *Bloom*, 5 *John.* 375.)

As the surrogate erred in adjudging that the legacy to the appellants was void, the proceedings before him must be reversed. The questions involved are difficult and intricate, and I therefore think that the costs of this appeal should be paid out of the estate.

Decree of the surrogate reversed, as to the disallowance of the legacy, and so modified as to direct the payment of such legacy, with interest, and the costs of both parties on the appeal, out of the estate.

[ALBANY GENERAL TERM, September 16, 1867. *Miller*, *Hogeboom* and *Ingalls*, Justices.]