DECEMBER 9,                NASHUA FIRE INS. CO. *v.* MOORE.
    1874.

The charter of a mutual fire insurance company provided that every person becoming insured therein should pay upon the execution of his policy the premium thereon, and in addition thereto deposit his written agreement to hold himself liable for an equal amount in the capital stock of the company, to be assessed and collected by the directors in such sums and at such times as they should deem expedient; that all premiums and deposits thus made should be considered the absolute funds of the company, and be applied, first, to the payment of the expenses of the company; secondly, of money borrowed; and, thirdly, of losses and notes given in payment of losses;—and in case losses should happen so as to consume the absolute funds of the company, each member should be held to pay, at the discretion of the directors, during the term of his policy, a sum not exceeding two dollars for each dollar of premium and deposit.   *Held,* that such a deposit note was subject to collection at any time, at the discretion of the directors, for the purpose of discharging expenses, debts, and losses of the company; that it was not necessary to enforce payment of such notes by a general assessment; and that such note might be collected to pay losses and expenses which accrued before the maker became a member of the corporation.

One who gives a note to a corporation will not be permitted to deny that there is such a corporation.

In an action brought by a corporation, the defendant, by pleading the general issue, admits that the plaintiffs are a corporation capable of sustaining an action.

A provision in the by-laws of a corporation, which requires the directors to be chosen at the annual meetings of the corporation, is directory only, and not restrictive.   Its observance is not essential to the exercise of the power of election.

The legality of the election of directors of a corporation cannot be brought collaterally in question; but proceedings must be instituted for the express purpose of evicting them, if not properly elected.

ASSUMPSIT, on three notes signed by the defendant and payable to the plaintiffs, on demand,—one for $17.75, dated Nov. 2, 1867; one for $5, dated May 10, 1868; and one for $22.50, dated May 11, 1869.

Each note contained the following stipulation : "The above note is to be paid for the purpose and in pursuance of the act incorporating said company, and the by-laws thereof, and not otherwise." Writ dated Dec. 18, 1871. The case was tried by the court, and the following facts were found :

The plaintiffs produced a book purporting to be a record-book of the plaintiffs, in which was written the following :

Office of Nashua Fire Insurance Co., 7½ o'clock, Feb. 24, 1870, P. M. The directors met at the above time and place. Present, H. T. Morrill, M. W. Merrill, Geo. McQuesten, J. W. White, F. F. Kimball, J. G. Blunt, and E. B. Hammond. On motion of J. W. White, proceeded to ballot for directors. Whole number of votes cast, 7 ; necessary for a choice, 4. J. D. Otterson, C. F. Stetson, C. B. Hill, H. F. Courser, H. T. Morrill, M. W. Merrill, Geo. McQuesten, J. W. White, F. F. Kimball, J. G. Blunt, E. B. Hammond, had seven each, and were declared elected. On motion of M. W. Merrill, an assessment of one hundred per cent. on all notes given for policies that had not expired prior to noon of February 8, 1870, was voted ; and ninety per cent. on all notes given on policies that were in force when loss or losses occurred during either of the years 1867, 1868, or 1869, but had expired prior to February 8, 1870. On motion of J. W. White, voted to adjourn. A true record :—attest—J. B. Fassett, secretary and treasurer. The assessment, if valid, would be of 90 per cent. of the first note, and 100 per cent. of the other two. The charter of the plaintiffs, passed in 1856, contains the following provisions : SEC. 1. The company may make by-laws. SEC. 2. All persons who may become insured under this act, and also their legal representatives, continuing to be so insured as is hereinafter provided, shall be members of this corporation, for and during the time specified in their respective policies, and no longer, and shall at all times be concluded by the provisions thereof. SEC. 3. The property and affairs of said company shall be controlled and managed by a board of directors, who shall be members of the same, and be chosen by ballot at the annual meeting thereof, and shall hold their offices during one year, and until others chosen shall have accepted of the trust in their stead. All vacancies happening in said board during the interval between the annual meetings may be filled by the remaining members, and a majority of the board shall constitute a quorum for the transaction of business. This board shall elect one of their number to act as president : they shall hold their meetings monthly, or oftener, as the affairs of the company shall require, and shall keep a record of their proceedings. SEC. 4. That the directors shall, from time to time, appoint a secretary, treasurer, * * * and may remove them at pleasure. SEC. 6. Every person becoming insured by said company shall pay, upon the execution of his policy and before the delivery thereof, the premium thereon, and, in addition thereto, deposit his written agreement to hold himself liable for an equal amount in the capital stock of the company, to be assessed and collected by the directors, in such sums and at such times as they shall deem

expedient. All premiums and deposits thus made shall be considered the absolute funds of the company, and shall be liable and held pledged to pay, first, the expenses of the company; second, money borrowed; third, losses and notes given in payment of losses; but in case losses should happen so as to consume the absolute funds of the company, then each member shall be held to pay, at the discretion of the directors, during the term of his policy, a sum not exceeding two dollars for each dollar of premium and deposit. The premiums and deposits shall be returned to members as a dividend at the expiration of their respective policies, in a ratable proportion, after deducting for expenses and losses such part thereof as the directors may deem proper. Sec. 12. The annual meeting of the company shall be holden at said Nashua, on the first Monday of August in each year, or such other day as the said company may appoint. Sec. 15. That this act shall be subject to all the provisions and restrictions of the laws of this state in relation to corporations.

The by-laws of the company contain the following provisions:

Art. 1. The annual meeting shall be holden on the first Monday in August annually. All meetings shall be notified by advertisement published in one or more newspapers printed in the city of Nashua, at least ten days before the time of meeting; but in case of omission to notify the annual meeting as aforesaid, the same shall not thereby be lost, but shall be adjourned for the transaction of business until the requisite notice shall be given. Special meetings may be called by the directors, and shall be called on the request of the owners of one tenth of the property insured. At the annual meeting, it shall be in order to act on any subject within the powers of the corporation. At special meetings, the subject to be acted on must be specified in the notice of such meetings. Art. 2. No risk in any one policy shall exceed $3,000. Art. 4. The directors shall hold their stated meetings at the company's office, on the afternoon of Saturday preceding the first Monday of each month.

The defendant objected that there was no competent evidence to prove any record of the company, or that there is or ever was any officer of the company properly chosen or qualified, or that there had ever been any legal meeting of the company or directors, or that the assessment purporting to have been made February 24, 1870, was made by persons authorized to make it, or that there was any cause for making it, or that any of the proceedings were valid or binding on the defendant.

Mr. Fassett, being sworn as a witness, produced said book, and, subject to the defendant's exception, testified that he was the secretary and treasurer of the company; that the book was the record book of the company; that the records in it purporting to be made by him, were made by him, and were correct; that there was no record of notice of the directors' meeting held February 24, 1870; that he gave the directors personal notice of that meeting; that there were several losses,—one of $1,000, another of $600, and another (Dr. Moore's), $4,650,—which the company were unable to pay.

At the first meeting of the grantees, under the plaintiffs' charter, E. P. Emerson was chosen clerk, and duly sworn. There is no record that any one else was ever sworn as an officer of the company, and no one else ever was so sworn. The record in the book of the first and some other meetings, including the signature of the clerk, was written by the son of said Emerson, by his direction. The record of several meetings, when George Stark was clerk *pro tem.*, was made by the same person in the same way, in one instance *pro tem.* after the signature being accidentally omitted. There is no record of notice of any meeting. Notice of annual meetings was formerly published; but about 1865 that practice ceased, and the only notice of any meeting afterwards was by the secretary personally notifying those who were considered the directors, and by others happening accidentally to be informed. This method of giving notice was adopted in good faith, to save the expense of printing, which had been found to be practically useless, as the meetings were not attended by anybody but those regarded as directors. The last meeting of the company was October 3, 1866, when eleven directors were chosen. After that the directors were elected by the directors. The only time Fassett was elected secretary was by the directors, October 4, 1866. August 7, 1865, was the only time he was chosen treasurer by the company, and he never gave a bond. Dr. Moore had three policies,—one of $2,500 on his barn, one of $2,000 on his house, and one of $1,000 on his personal property. Of the persons acting as directors in making the assessment, February 24, 1870, Hammond and McQuesten were not then members of the company. McQuesten's policy expired September, 1868. He was one of the original grantees in the charter, and he had been elected director at every meeting of the company and of the directors, when directors had been chosen. Merrill was first elected at the annual meeting, September 22, 1858, and was reëlected at every subsequent election, and his policy was in force February 24, 1870. Morrill and Blunt were elected at the annual meeting, August 1, 1859, and reëlected at every subsequent election, and their policies had not expired February 24, 1870. Otterson and White were elected at the annual meeting, August 6, 1860, and were reëlected at every subsequent election, and their policies had not expired February 24, 1870. F. F. Kimball was elected January 22, 1869 (to fill a vacancy caused by the death of his brother), and February 24, 1870. All these were present and voted for the assessment, February 24, 1870, and the vote was unanimous.

Merrill and Blunt held partnership policies. At the annual meeting, August 7, 1865, besides those already mentioned as elected directors, L. W. Noyes, Geo. Stark, Franklin Munroe, Elijah Colburn, Alvah Kimball, H. F. Courser, C. B. Hill, E. B. Hammond, Josiah Fleeman, Luther Pollard, L. H. Clement, and Charles F. Stetson, were elected directors. The whole number elected at that time was eighteen. Kimball died in June, 1869, Clement in May, 1868, and Noyes in March, 1867, and the policies of Stark, Munroe, Hill, Hammond, Pollard, and Stetson had expired before February 24, 1870. The defendant had due

notice of the assessment within a week after it was voted.   Upon the foregoing facts judgment is to be rendered, unless the defendant elects a trial on the question whether the notes were obtained by fraudulent representations.   The books and papers used at the trial may be referred to as part of this case.

*H. B. Atherton*, for the plaintiffs, cited *Berry* v. *Osborn*, 28 N. H. 283 ; *Rix* v. *Ins. Co.*, 20 N. H. 198 ; *Long Pond M. F. Ins. Co.* v. *Houghton*, 6 Gray 77 ; *Despatch Line* v. *Bellamy Co.*, 12 N. H. 205 ; *Edgerly* v. *Emerson*, 23 N. H. 557 ; *Hilliard* v. *Gould*, 34 N. H. 239 ; *U. S. Bank* v. *Dandridge*, 12 Wheaton 66.

*W. W. Bailey*, for the defendant, cited *Ins. Co.* v. *Fitzpatrick*, 2 Gray 279 ; *Ins. Co.* v. *Harvey*, 45 N. H. 292 ; Gen. Stats. 276, secs. 8, 9 ; *ib.* 277, sec. 15 ; Charter, sec. 3 ; *Haynes* v. *Brown*, 36 N. H. 545 ; *Chelmsford Co.* v. *Demarest*, 7 Gray 1 ; *Ins. Co.* v. *Westcott*, 14 Gray 442.

SMITH, J.   Two questions are raised in this case.
1.   Must the plaintiffs show that the assessment of February 24, 1870, was needed to pay losses and expenses before they can recover?
2.   Can the right of those persons to hold the office of directors, who assumed to act as such, February 24, 1870, be called in question in this suit ?

1.   By section 6 of the plaintiffs' charter, every person becoming insured is required to pay a premium in cash, and to deposit his written agreement to hold himself liable for an equal amount in the capital stock of the company, to be assessed and collected by the directors in such sums and at such times as they shall deem expedient.   The premiums and deposits thus made are considered the *absolute* funds of the company, and are made liable and held pledged to pay (1) the expenses of the company, (2) money borrowed, (3) losses, and notes given in payment of losses.   In case it should happen that the absolute funds of the company should be consumed, each member is liable to pay, at the discretion of the directors during the term of his policy, a sum not exceeding two dollars for each dollar of premium and deposit.
A distinction is here made between the *absolute* funds of the company, and funds raised by ordinary assessments after the absolute funds have been expended.   It has been settled, both in this state and in Massachusetts, that in assumpsit by a mutual fire insurance company against one of its members, upon his premium note promising to pay the company a certain sum of money in such portions and at such times as the directors of the company may, agreeably to their charter and by-laws, require, where such member is liable to assessment only for losses and expenses occurring during the term mentioned in his policy, the plaintiffs cannot recover unless they show an assessment duly made for such losses or expenses.   *Insurance Co.* v. *Harvey*, 45 N. H. 292 ; *Insurance Co.* v. *Fitzpatrick*, 2 Gray 279.

If this suit were to recover an assessment not exceeding two dollars for each dollar of premium and deposit, it must fail, because the plaintiffs have failed to show what expenses and losses were included in the assessment. The case shows that there were several losses,—one $1,000, another of $600, and another of $4,650; but when they occurred, whether before or during the term covered by the defendant's policy, is not shown. But the *absolute* funds of a mutual insurance company stand differently. They can be collected at any time under the direction of the directors, and when collected be applied to the discharge of any debts and liabilities of the company—even losses and expenses which occurred before the insured became a member of the corporation. *Long Pond Ins. Co.* v. *Houghton*, 6 Gray 77. Whether this provision of the plaintiffs' charter is a wise one, or is equitable, is a question not open to inquiry. It is the law as enacted by the legislature, and was assented to when the defendant accepted his policy.

2. The second question relates to the legality of the organization of the company, and of the election of the directors. The legality of its organization, or the fact of its existence, is not open to the defendant to question. The giving of a note to a corporation is an admission by the defendant of the existence of the corporation, and he is not permitted to deny that there is a duly organized corporation—*Society* v. *Perry*, 6 N. H. 164; Ang. & A. on Corp. 381; and in general, when a defendant intends to insist that there is no such corporation, he must plead it either in bar or atatement. *School District* v. *Blaisdell*, 6 N. H. 197; *Concord* v. *McIntire*, 6 N. H. 527. Whether there was a board of directors capable of acting, on February 24, 1870, presents a question of more difficulty.

By section 3 of the company's charter, it is provided that the property and affairs of the company shall be controlled and managed by a board of directors, who shall be members of the company, and be chosen by ballot at the annual meeting thereof, and shall hold their offices during one year, and until others chosen shall have accepted the trust in their stead. Vacancies happening between the annual meetings may be filled by the remaining members, and a majority is constituted a quorum for the transaction of business.

By article 1 of the by-laws, it is provided that the annual meeting shall be holden on the first Monday in August annually;—all meetings shall be notified by advertisement in one or more newspapers printed in Nashua, but in case of omission to notify the annual meeting, it shall not thereby be lost, but shall be adjourned for the transaction of business until the requisite notice shall be given. The number of directors to be chosen is not fixed by the charter or by-laws.

The case finds that the last annual meeting, which was holden in pursuance of a published notice, as required by article 1 of the by-laws, was holden August 7, 1865. Assuming, in the absence of any intimation to the contrary, that that meeting was legally called and holden, it appears that there were chosen, at that meeting, eighteen directors. Of this number, three had died previous to February 24,

1870, and seven had ceased to be members by reason of their policies having expired. F. F. Kimball had been chosen, by the surviving directors, a director in place of his brother, A. Kimball, who was one of the three deceased directors. So that, on February 24, 1870, if the board elected in August, 1865, is to be considered as holding over, the board consisted of nine members, viz., Messrs. Merrill, Morrill, Blunt, Peterson, White, Courser, Colburn, Fleeman, and F. F. Kimball. Five of these gentlemen being a quorum, viz., Messrs. Merrill, Morrill, Blunt, White, and F. F. Kimball, were present at the directors' meeting, February 24, 1870, and voted for the assessment. If the board elected in 1865 held over, the vote creating this assessment would seem to be legal; but, if it is admitted that the board elected in 1865 did not hold over, then, at the time the meeting of February 24, 1870, was held, the board of directors, acting as such, consisted of McQuesten, Merrill, Morrill, Blunt, Otterson, White, Hammond, and F. F. Kimball, eight in all. McQuesten and Hammond had ceased to be members by reason of their policies having expired, which would leave a board consisting of six members, all of whom, except Otterson, were present and voted the assessment.

At the meeting holden February 24, 1870, eleven directors were chosen; but McQuesten, Hammond, Stetson, and Hill were inelligible by reason of their policies having expired, which would leave the board consisting of seven members, viz., Merrill, Morrill, Blunt, Otterson, White, Courser, and F. F. Kimball, all of whom, except Otterson and Courser, were present and voted for the assessment.

The plaintiffs claim that although the assessment may not have been voted by a board of directors legally elected, yet, being in office under color of an election, their acts are valid.

In *Hughes* v. *Parker*, 20 N. H. 58, it was held—GILCHRIST, C. J., delivering the opinion of the court—that the law, in requiring the directors to be chosen at the annual meeting, does not imply that elections held at other times shall be wholly void. The law is merely directory, and does not, in terms or by implication, attach such a consequence to an omission or non-observance of the prescribed modes of exercising the power of electing directors. The following authorities were cited and commented upon, in support of this position : *Hicks* v. *Launaston*, Rolle's Ab. 514; *The King* v. *Poole*, B. R. H. 27; *Prowse* v. *Foot*, 2 Bro. P. C.; *People* v. *Runkle*, 9 Johns. 147; *Rex* v. *Loxdale*, 1 Burr. 447; *Rex* v. *Leicester*, 7 B. & C. 12; Dwarris on Statutes 714.

In *Hughes* v. *Parker* it was also held that irregular elections are voidable only, and not void; that the acts of officers in, under color of an election, are binding so long as they retain their offices; and that the legality of their election cannot be brought collaterally in question, but proceedings should be instituted for the express purpose of trying it, and of evicting them, if not properly entitled to the offices which they have assumed to exercise.

We do not, therefore, find it necessary to decide whether the nine remaining members of the board, elected in 1865, held over, or whether

the election of February 20, 1870, or the election next prior to that, were valid elections. A quorum of either board was present and voted the assessment. They were in office, acting under color of an election and the legality of their election cannot be questioned, collaterally, in this suit.

The records used on the trial were not admissible. The first clerk only was sworn. While he was in office, the records were kept by his son. He could not delegate the signing of his name to another. The present clerk never was sworn, and, consequently, never was qualified. There being, then, no legal records, parol evidence was admissible of the acts of the company.

We do not find any occasion to compliment the plaintiffs upon the manner in which their officers have managed the affairs of the company.

CUSHING, C. J., and LADD, J., concurred.

Unless the defendant elects a trial on the question whether the notes were obtained by fraudulent representations, there must be

*Judgment for the plaintiffs.*